Case 1:23-cv-00169   Document 16   Filed on 10/04/24 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
October 04, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ABELINA BADILLO, | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-cv-169 |
| | § | |
| MARTIN O'MALLEY, | § | |
| *Commissioner of Social Security,* | § | |
|   Defendant. | § | |

**MEMORANDUM AND OPINION ORDER
GRANTING COMMISSIONER'S MOTION FOR SUMMARY
JUDGMENT AND AFFIRMING DENIAL OF SOCIAL SECURITY
BENENFITS**

**I. Synopsis**

Abelina Badillo ("Badillo") applied for social security benefits. Her request was denied. Badillo now appeals to this Court for review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her benefits. This Court finds the Administrative Law Judge ("ALJ"), representing the Commissioner, applied appropriate legal standards and based the denial of benefits on substantial evidence. Badillo argues the medical opinion evidence of her intellectual quotient ("IQ") was improperly discounted. The Court disagrees. The ALJ examined the whole record and adjusted Badillo's residual functional capacity ("RFC) to account for Badillo's IQ deficits by imposing appropriate limitations. Also, the ALJ's process was sufficiently descriptive to allow this Court's review. In its review, the Court finds the denial of benefits is consistent with the record evidence and the applicable legal standards. The Court finds no error with the final decision to deny disability insurance benefits and supplemental security income.

**II. Jurisdiction**

Following the parties' consent to magistrate judge jurisdiction, the Court is empowered to enter a final disposition pursuant to 28 U.S.C. § 636(c)(1) and Local Rule 72. Dkt. Nos. 5 and 7.

This Court retains jurisdiction pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner for social security disability insurance claims arising under Title II of the Social Security Act, 42 U.S.C. § 421. This Court retains jurisdiction pursuant to 42 U.S.C. 1383(c) to review a final decision of the Commissioner for supplemental security income claims arising under Title XVI of the Social Security Act. Venue is appropriate because Badillo resides in Cameron County, Texas. 42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6).

### III. Standard of Review

The Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the relevant legal standards were applied in reaching this decision. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). When applying the substantial evidence standard, a court does not "reweigh the evidence in the record, not try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner's]." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "Conflicts within the evidence are not for the court to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The ALJ's decision must stand or fall on the rationale set forth in the ALJ's opinion. *Newton v. Apfel*, 209 F.3d 455, 458 (5th Cir. 2000). If the Commissioner's findings use the relevant legal standards and are supported by substantial evidence, the findings are conclusive and so must be affirmed. 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Summary judgment is proper where the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Although the "same standard rules governing summary judgements apply to a review of an administrative denial of social security benefits," the court's review is limited by 42 U.S.C. § 405 (g). *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 500 (S.D. Texas 2003) (cleaned up).

### IV. Disability Determination Process

Title II of the Social Security Act provides benefits to individuals with a disability. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459-61 (1983). The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

A claimant is not entitled to benefits under Titles II and XVI of the Social Security Act unless they are disabled as defined by the Act. 42 U.S.C. 423(d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459-61 (1983). The law and implementing regulations governing benefits under both Titles, broadly known as Social Security Disability Insurance and Supplemental Security Income are consistent with one another. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Greenspan v. Shalala*, 38 F. 3d 232, 236 (5th Cir. 1994).

A claimant seeking Social Security benefits bears the burden of proving a disability as defined by the Social Security Act, 20 C.F.R. § 416.920(a)(4). A claimant satisfies that burden, when he or she demonstrates a physical or mental impairment which lasts at least twelve months and precludes that person from pursuing any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(ii). Once the claimant proves disability as defined by the Social Security Act, the administrative law judge utilizes a five-step sequential process to determine whether the claimant can perform substantial gainful activity. This five-step process is set forth in 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary as the person is entitled to benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a). The initial burden of proof lies with the claimant in the first four steps and the burden shifts to the Commissioner

at the fifth step. *Bowling v. Shalala*, 36 F.3rd 431, 435 (5th Cir. 1994). The steps are as follows:

1. At step one, the claimant must not be presently working at any substantial gainful activity, or work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.
2. At step two, the claimant must have a severe impairment or a severe combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), cited in *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).
3. At step three, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d).
4. At step four, the impairment or impairments must prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).
5. At step five, if the claimant's impairment prevents past work, the ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if any other work can be performed. 20 C.F.R. § § 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

Residual functioning capacity, which is determined between the third and fourth steps, "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Irby v. Barnhart*, 180 Fed. App'x 491, 493 (5th Cir. 2006) (unpub.) (citing Social Security Ruling ("SSR") 96-8p).[1]

The ALJ uses a two-part determination when considering the claimant's residual functioning capacity.

---

[1] "The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

    a. The first part determines whether the claimant suffers from a medically determinable impairment "reasonably capable of producing" the claimed symptoms. *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b).

    b. In second part of the inquiry, the ALJ evaluates the intensity, persistence, and limiting effects of the individual's symptoms" on a person's ability to do basic work activities. SSR 16-3p (S.S.A Oct. 25, 2017). In performing this evaluation, the ALJ considers the following matters: objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes. *Id.* In addition to medication, the ALJ also considers other treatment the individual receives for relief of pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). Lastly, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. *Id.*

When a mental impairment is present, the ALJ must "first evaluate [claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1); *See also* 20 C.F.R. § 404.1520a; *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (determining merits of mental disability claims). If the ALJ determines that the claimant has a medically determinable mental impairment, then the ALJ must use a special technique to evaluate the severity of the impairment. To do so, the ALJ evaluates the degree of functional limitation resulting from the impairment in four separate areas deemed essential for work: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate,

persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2)–(c)(4). These limitations can be rated "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 416.920a(c)(4). If the degree of functional limitation is "none" or "mild" in each of the four areas, the ALJ must find the impairment "not severe," which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1). If the mental impairment is "severe," under §§ 404.1520a(c)(4) and (d)(1)(2), the ALJ must then determine if it meets or equals a listed mental disorder under Appendix 1. *See* 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct the RFC assessment as outlined above in step five. 20 C.F.R. § 404.1520a(d)(3).

## V. Background

### a. Administrative Procedural History

Badillo filed applications for disability insurance benefits and supplemental security income on August 27, 2021, alleging a disability onset date of May 14, 2020. Dkt. No. 8-1, p. 10. These applications were initially denied on April 18, 2022. *Id.* They were denied again upon reconsideration on November 21, 2022. *Id.* Thereafter, Badillo filed a written request for a hearing before an ALJ. *Id.* Badillo's request was granted, and a hearing before ALJ Carrie Kerber was held telephonically on May 25, 2023.[2] *Id.* Ultimately, the ALJ issued an unfavorable decision on July 12, 2023, finding Badillo was not disabled within the meaning of the relevant legal standards and denying both disability insurance benefits and supplemental security income. *Id.* at 20. This negative decision was appealed, and the Appeals Council ("AC") denied further review. Dkt No. 8-1, pp. 1-3. The ALJ's July 2023 decision represents the final determination of the Commissioner and is ripe for judicial review.[3]

---

[2] The full transcript of this administrative proceeding is available at Docket Number 8-1, pages 33-58.

[3] When the Appeals Council declines review of the Administrative Law Judge's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

On November 21, 2023, Badillo initiated this action challenging the denial of benefits and seeking reversal of the Commissioner's decision. Dkt. No. 1.

### b. Factual History

Badillo was approximately 47 years-old at the time of her alleged disability onset date. Dkt. No. 8-1, p. 59. She claims her current disability status stems from diabetes, depression, asthma, headaches and learning difficulties. *Id.* She also claims problems with her heart, hand, wrist, arms, back, knees, hips, and ankles. *Id.* In 2017, Badillo received an unfavorable disability determination in a prior disability application. Badillo claims symptoms of pain and problems with understanding, memory, concentration, social interaction, and ability to adapt. Dkt. No. 8-1, p. 62. Her employment history reflects work experience as a babysitter, cook, and construction laborer. Dkt. No. 8-1, p. 229. Badillo claims she stopped working because of her listed conditions, including weak hands that caused her to drop a paint brush when doing construction labor. Dkt. No. 8-1, p. 228.

### c. Hearing Testimony

In her hearing before the ALJ, Badillo testified to difficulties with her diabetic arthritis and her ability to walk. Dkt. No. 8-1, pp. 43-44. Specifically, Badillo testified that when she must walk for over 10 minutes, her knees hurt and shake. Dkt. No. 8-1, p. 44. She also described the use of a cane to improve these symptoms. Dkt. No. 8-1, p. 45. Concerning activities of daily living, Badillo testified, if able to sit frequently, she can bathe and clothe herself. Dkt. No. 8-1, p. 46. Badillo testified she has a sixth grade education but cannot read or write. Dkt. No. 8-1, pp. 38-39. Badillo lives with her daughter but spends time during the day with her sister-in-law. Dkt. No. 8-1, p. 39. She reports being self-employed over the last 15 years. Dkt. No. 8-1, p. 40. Concerning her mental health, Badillo briefly detailed her experience with clinical depression and described heightened emotionality, "like now, I just want to cry." Dkt. No. 8-1, p. 50. Badillo expresses suicidal thoughts. Dkt. No. 8-1, pp. 50-51. When Badillo was examined by her attorney, Badillo testified that her family worries for her mental and physical health and tries not to leave her unsupervised. Dkt. No. 8-1, p. 51.

Vocational expert ("VE"), Dr. Julia Gutierrez, also testified at the review hearing. VE

Gutierrez answered hypothetical questions about limitations of an individual of Badillo's age, education, and work experience. Dkt. No. 8-1, pp. 54-58. Applying the limitations proposed by the ALJ, VE Gutierrez found Badillo unable to perform her past work as a house painter, house cleaner or cook. Dkt. No. 8-1, pp. 54. VE Gutierrez did identify, based on further ALJ's limitations, various jobs available in the national economy Badillo could perform. Dkt. No. 8-1, pp. 54-56.

### d. Medical Evidence

As a part of the disability determination process, state agency consultants reviewed Badillo's medical records which covered both physical and mental health concerns. Dkt. No. 8-1, pp. 59-98. Drs. Ligon and Johnson, state agency medical consultants, evaluated Badillo's physical health. Dkt. No. 8-1, pp. 59-67, 88-98. In his evaluation, Ligon determined that Badillo can engage in light work except that she can occasionally climb, kneel, crouch and crawl and can frequently balance and stoop. Dkt. No. 8-1, p. 63. Dr. Johnson adopted this conclusion with the addition of a limitation to avoid even moderate exposure to pulmonary irritants. Dkt. No. 8-1, p. 92-3. Drs. Rudnick and Strand, state agency psychological consultants, evaluated Badillo's mental health and functioning. Dkt. No. 8-1, pp. 78-81; 84-86. Both psychological consults, into considered her IQ and reduced memory, then endorsed that Badillo is limited to work with detailed (but not complex) instructions in a routine work setting. Dkt. No. 8-1, pp. 65, 81.

In 2017, at the request of Disability Determination Services, Dr. Tracy Copp, Ph.D., conducted a psychological examination of Badillo. Dkt. No. 8-1, pp. 313-320. As a part of the evaluation process, Dr. Copp reviewed Badillo's medical records, performed a clinical interview, and utilized objective diagnostic tests. In relation to her cognitive and intellectual functioning, Badillo was assessed using the Wechsler Adult Intelligence Scale – 4th Edition (WAIS-IV). Dkt. No. 8-1, pp. 313, 315-316. The testing revealed that Badillo's "verbal comprehension" and "processing speed" are at an "extremely low" level. Dkt. No. 8-1, pp. 316. Similarly, her "perpetual reasoning" and "working memory" are at a "borderline" level. Taken together, the results of this test show that Badillo's "general cognitive ability of within the extremely low range and above 1% of her peers (FSIQ =

65).″ Dkt. No. 8-1, p. 315.  Dr. Copp determined Badillo qualified for dual diagnoses of Borderline Intellectual Functioning and Major Depressive Disorder, Moderate.  Dkt. No. 8-1, p. 320.  Applying these diagnoses to Badillo's then-pending application for disability benefits, Dr. Copp opined that Badillo's "cognitive abilities" and "ability to interact effectively with peers" are affected by her condition.  *Id.*

## VI.   Commissioner's Decision

Using the Social Security Administration's established five-step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R.§404.1520(a), the ALJ determined Badillo is not disabled.

At step one, the ALJ found that Badillo met the insured status requirements of the Social Security Act through March 31, 2023.  Dkt. No. 8-1, p. 12.  The ALJ also found that Badillo did not engage in substantial gainful activity since her alleged disability onset date, May 14, 2020.  *Id.*

At step two, the ALJ noted the following severe impairments: osteoarthritis/arthralgia, diabetes mellitus, obesity, major depressive disorder, anxiety disorder, and borderline intellectual function.  Dkt. No. 8-1, p. 13.  The ALJ specifically considered the impairments in listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders) and found Badillo does not qualify.  The ALJ also found evidence of the non-severe impairments of hypertriglyceridemia and dyslipidemia.  *Id.*

At step three, the ALJ found Badillo's impairments, considered singly or jointly, do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  Dkt. No. 8-1, p. 13.

At step four, the ALJ found Badillo is unable to perform any past relevant work.  Dkt. No. 8-1, p. 18.

At step five, the ALJ found that Badillo's RFC allows her to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can frequently balance and stoop; can

occasionally kneel, crouch, and crawl; and can have occasional exposure to respiratory irritants such as concentrated fumes, odors, dusts, and gases. Dkt. No. 8-1, p. 15. The ALJ also found that Badillo is capable of understanding, remembering, and carrying out detailed (but not complex) instructions and can adapt to occasional changes in the work routine. Dkt. No. 8-1, p.15. The ALJ determined that Badillo's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." Dkt. No. 8-1, p. 16.

Specific to the issue before the Court, as to Badillo's mental impairments, the ALJ found Badillo was diagnosed with depressive disorder, anxiety disorder, and borderline intellectual functioning. Dkt. No. 8-1, p. 16. The ALJ also found that while Badillo claims her impairments cause difficulty with memory, completing tasks, understanding, following instructions, getting along with others, managing stress, and changes in routine, she has multiple normal mental examinations, demonstrates a normal fund of knowledge, mood, affect, attention, and concentration, is cooperative with her treating doctors and spends time around others. Dkt. No. 8-1, pp. 16-17. The ALJ considered Badillo's full-scale IQ of 65 and her demonstrated reduced memory. Dkt. No. 8-1, p. 17.

In this same step, the ALJ relied on VE testimony to determine the type and level of work available to a person of a with an RFC equivalent to Badillo's assessed RFC. Dkt. No. 8-1, pp. 18-20. The VE applied the RFC limitations to jobs available in the national economy and determined that an individual with Badillo's assessed RFC would be able to perform work as a router, marker, or server. Dkt. No. 8-1, p. 19. After consideration of this VE testimony and record as a whole, the ALJ found Badillo is capable of making a successful adjustment to other work that exists in the national economy and concludes she is not disabled. *Id.* At 19.

## VII. Analysis

### a. Statement of Issues

The specific issue raised on appeal by Badillo is that the ALJ failed to properly evaluate the medical opinion of psychological consultative examiner, Dr. Tracy Copp.

First, Badillo argues: "it was improper for the ALJ to discredit the findings of Dr. Copp's IQ examination simply because the results were taken a few years prior to the alleged onset date." Dkt. No. 12, p. 7. Second, Badillo claims the ALJ failed to explain how she evaluated the persuasiveness of Dr. Copp's 2017 medical opinion. Dkt. No. 12, p. 8. In response, the Commissioner contends the ALJ properly evaluated Dr. Copp's medical opinion using the relevant legal standards and identified substantial evidentiary support for the denial of benefits. Dkt. No. 15, pp. 4, 10.

### b. Court's Findings

The Court finds substantial evidence supports the ALJ's determination that Badillo is not disabled within the meaning of the Social Security Act. The ALJ applied the relevant legal standards supported by substantial evidence that Badillo can perform the requirements of light work when reduced by the noted limitations. The ALJ properly considered the persuasiveness of Dr. Tracy Copp's medical opinion and articulated her reasons for finding the opinion somewhat persuasive thereby limiting the adoption of Dr. Copp's recommendations as to Badillo's capacity.

An ALJ is required to consider the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c(b). In determining the persuasiveness of the medical opinion, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's specialty and (5) other factors including the source's familiarity with other evidence in the claim, including whether the source considered new evidence received after the source made the medical opinion. 20 C.F.R. § 404.1520c(c). The most important factors in evaluating persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency factors for a medical source opinion. *Id.*

The ALJ finds the medical opinion of Tracy Copp, Ph. D. issued on March 21, 2017, somewhat persuasive. The ALJ specifically articulates Dr. Copp's opinion includes limitations that are vague and confined to Dr. Copp's examination of Badillo. The ALJ finds the limitations for Badillo placed by Dr. Copp regarding interacting with others are not supported by nor consistent with the record before her in 2023.

Badillo contends that the ALJ improperly discredits the findings of Dr. Tracy Copp's IQ examination, because the opinion is dated in 2017. Badillo appears to assert that the ALJ discredited the IQ examination, because it was conducted before Badillo's alleged disability onset date. However, the record does not support this contention. The record reflects Dr. Copp's medical opinion is limited to the 2017 psychological examination of Badillo. However, as part of her process in determining the persuasiveness of Dr. Copp's medical opinion, the ALJ is allowed to consider whether new evidence was received after the a source made their medical opinion. Dr. Copp's medical opinion is from 2017. Badillo's most recent social security claim is from 2020. Badillo has past work history through 2020. Badillo presented to the ALJ her medical records through 2023. Dr. Copp's March 21, 2017, evaluation did not have the benefit of the most recent medical evidence.

In reviewing the ALJ's persuasiveness determination, a court looks for a sufficient explanation of consistency and supportability to allow a court to undertake a meaningful review of whether the reasoning is supported by substantial evidence. *Ramirez v. Saul,* No. SA-20-CV-00457-ESC, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021). However, a point-by-point discussion of every opinion review is not always required. *Silva v. Kijakazi*, No. 22-51045, 2023 WL 3723628, at *1 (5th Cir. 30, 2023) (citing *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007). "Generally, there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec.,* 2022 WL 196296, at *4 (N.D. Tex. Jan. 21, 2022). Rather, "[a]t a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review. *Id.* (citing *Kinney v. Astrue,* 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009), rec. adopted, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009)).

In describing the persuasive value of Dr. Copp's medical opinion, the ALJ notes that the opinion was issued before the alleged onset date, but the ALJ does not rely on the date to discount Copp's opinion. Instead, the ALJ specifies that Copp's opinion is somewhat persuasive and points to record evidence which contradicts some of Copp's assessed

limitations of Badillo's functioning.[4]  Copp's opinion is also used by the ALJ to substantiate the findings of the state agency psychological consultants who themselves reviewed Copp's opinion as a part of their independent evaluations.  Dkt. No. 8-1, p. 17.  The ALJ specifically found that limitations Copp identified are "vague," yet the ALJ still considers Dr. Copp's opinion. Dkt. No. 8-1, p. 18.  The ALJ did this by identifying the proposed limitations, matching them to other record evidence, and adopting those limitations which are consistent with the overall record.  Supportability and consistency were specifically analyzed by the ALJ. Overall, this evaluation is sufficient explanation of the ALJ's reasoning in evaluation of Dr. Copp's medical opinion.  The ALJ provided enough explanation for the Court to conduct meaningful judicial review and find that the ALJ's persuasiveness finding is supported by substantial evidence using relevant legal standards.

VIII.   Conclusion

Based on the foregoing, the Court finds substantial evidence supports the Commissioner's decision to deny Badillo disability benefits and supplemental security income.  Further, the Court finds the relevant legal standards were applied in the disability determination process.

Accordingly, it is ORDERED that the Commissioner's Motion for Summary Judgment is GRANTED.  Dkt. No. 15.  The final decision of the Commissioner denying Badillo benefits is AFFIRMED.

This is a final and appealable judgment that resolves all claims made in this case.

The District Clerk is directed to close this case.

Signed on October 4, 2024.

*Karen Betancourt*
Karen Betancourt
United States Magistrate Judge

---

[4] While the court acknowledges potential contradictions in the record evidence presented to the Administrative Law Judge, the Court will not evaluate these issues.  *See Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990) ("Conflicts within the evidence are not for the court to resolve.")